L. W. UMPHRES, Plaintiff-Appellant,

v.

SHELL OIL COMPANY, Defendant-Appellee.

No. 73–4006.

United States Court of Appeals, Fifth Circuit.

April 30, 1975.

Rehearing and Rehearing En Banc Denied June 23, 1975.

---

Dale E. Muller, James R. Sloan, Austin, Tex., for plaintiff-appellant.

William Simon, John S. Kingdon, Howrey, Simon, Baker & Murchison, Washington, D. C., William G. Winters, Jr., Houston, Tex., for defendant-appellee.

Before GEWIN, BELL and COLEMAN, Circuit Judges.

PER CURIAM:

Appellant Umphres, a former operator of four retail service stations in the Houston area, brought suit in the district court alleging that Shell Oil Company, his lessor, had violated various provisions of the Sherman and Clayton Acts, and the Clayton Act as amended by the Rob-

inson-Patman Act.[1] He contended that Shell had engaged in horizontal price-fixing, vertical price-fixing, price discrimination, and illegal tie-in arrangements with respect to gasoline, trading stamps, customer contests, and tires, batteries, and accessories ["TBA"]. Appellant also charged that Shell had generally engaged in anticompetitive practices in the form of forcing him to terminate his service station leases.

The district court granted a directed verdict for Shell after a five day trial, and at the point when appellant had completed his case in chief. This appeal is from the judgment entered for Shell on the directed verdict. We affirm.

Our standard for reviewing directed verdicts was explicated in Boeing Co. v. Shipman, 5 Cir., (en banc), 1969, 411 F.2d 365:

> On motions for directed verdict . . . the Court shall consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. 411 F.2d at 374.

See also Panotex Pipe Line Co. v. Phillips Petroleum Co., 5 Cir., 1972, 457 F.2d 1279, affirming a directed verdict in an antitrust case.

■ Reviewing the record on appeal with the Boeing principles in mind, we conclude that the district court did not err in granting Shell a directed verdict. Appellant's evidence of horizontal price-fixing included testimony that retail gasoline prices of the name-brand service stations in Houston tended to fluctuate in concert. The witnesses' knowledge of price changes was limited to but five of the approximately 2800 service stations in the Houston area, however. Appellant failed to produce evidence establishing the existence of an intercompany price-fixing agreement, arrangement, or conspiracy at the retail level, or at the wholesale level that might have been reflected in the alleged fluctuations of retail prices.

■ As to the vertical price-fixing charge, appellant, two other ex-dealers, an ex-sales representative, and one of appellant's station managers, all gave testimony as to the pressures applied to Shell dealers seeking compliance with Shell's suggested retail gasoline prices. Appellant admitted that it was always his decision to change his prices. One of his station managers testified that Shell agents had changed prices at his station only once—by one cent per gallon for one day when Shell executives were touring Houston. There was no provision in appellant's leases or in other dealers' leases requiring compliance with suggested prices. Evidence in support of the vertical price-fixing charge was clearly insubstantial.

■ Neither was there substantial evidence to support appellant's Robinson-Patman Act price discrimination claim. The short of the matter is that there was no evidence of discriminatory sales to two different purchasers by the same seller, where the recipient of the lower price was in competition with appellant. There was no testimony that Shell sold gasoline or other products to any retail competitor of appellant at a different price than Shell charged appellant.

■ There was considerable testimony offered as to claimed illegal tie-ins involving gasoline, trading stamps, custom-

---

1. Appellant alleged violations of Section 1 of the Sherman Act (15 U.S.C.A. § 1) [horizontal and vertical price-fixing], Section 3 of the Clayton Act (15 U.S.C.A. § 14) [illegal tie-ins], and Section 2 of the Clayton Act as amended by the Robinson-Patman Act (15 U.S.C.A. § 13(a)) [price discrimination]. Jurisdiction was alleged on the basis of 15 U.S.C.A. § 15.

er contests, and TBA. Ex-dealers and the ex-sales representative testified to the pressure applied to Shell dealers to participate in company programs and to offer company products. No lease provision required such participation. Shell itself did not operate the trading stamp concession. Appellant admitted that he was free to choose to participate in the contests, and that participation actually increased his sales volume. Shell stated in writing to the dealers that they were not required to sell Shell TBA. Appellant admitted that he had continued to sell non-Shell products throughout the terms of his leases. The evidence as to illegal tie-ins does not approach the level of such substantiality as to make issues for the jury.

█ Appellant testified that Shell attempted to force him out of business because it did not approve of the operation of a U-Haul trailer business on Shell property and because of his departures from Shell's merchandising programs. Contrary evidence included Shell's announced policy against multi-station ownership promulgated in 1968, the fact that only one of appellant's four leases was not renewed by Shell,[2] and the testimony of appellant that he was motivated to sell his last and most profitable station out of an interest to sue Shell which exceeded his desire to retain the station.

The record in this case reflects the respective roles of an oil company and its dealer in a competitive market where the oil company must distribute its products within the strictures of the antitrust laws. Plaintiff failed in his effort to prove any one of the alleged violations of those laws with evidence sufficient to warrant submission to the jury.

In the view we take of the case, it is unnecessary to reach questions associated with the district court's further conclusion that appellant failed to prove damages.

Affirmed.

2. Appellant's lease on his Bellfort station was not renewed in 1968. Appellant sold his lease to the South Belt station in 1968, cancelled his lease to the College station in 1969, and transferred his Broadway station lease in 1969.